```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTIONS,<br><br>                    Defendants. | No. 22 CV 6898 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Plaintiff Jane Doe's motion seeking leave to proceed pseudonymously.[1]  Defendants the City of New York and New York City Department of Corrections ("Defendants") oppose the motion.[2]  For the reasons below, Plaintiff's motion is GRANTED for pretrial proceedings.

I.  **Background**[3]

    This action is based on the Defendants' alleged retaliation against Plaintiff for filing a lawsuit against Defendants and Robert Kelly III for sexual assault and harassment in 2018 (the

---

[1] (See Plaintiff's Motion to File Under a Pseudonym, dated Aug. 12, 2022 [dkt. no. 5]; Plaintiff's Memorandum of Law in Support of her Motion to File Under a Pseudonym ("Pl.'s Mot."), dated Aug. 12, 2022 [dkt. no. 6]; Plaintiff's Reply Memorandum of Law in Further Support of her Motion to File Under a Pseudonym ("Pl.'s Reply"), dated Dec. 7, 2022 [dkt. no. 22].)
[2] (See Opposition to Motion to File Under a Pseudonym ("Defs.' Opp'n"), dated Nov. 23, 2022 [dkt. no. 18].)
[3] The facts set forth below are taken from the Complaint and presumed to be true for purposes of this motion.

"Prior Lawsuit"). (Compl., dated Aug. 12, 2022 [dkt. no. 1] at ¶ 13-15.) In the Prior Lawsuit, Plaintiff alleged that she was sexually assaulted and harassed by Kelly, who was at that time a Deputy Warden for the DOC, and Keisha Hanley, a correction officer for the DOC. (Id.) The Prior Lawsuit involved serious allegations of sexual assault and an extended period of sexual harassment following the sexual assault. (Id.) Plaintiff was permitted to proceed pseudonymously in the Prior Lawsuit for pretrial purposes. (Pl.'s Mot., Ex. B.) The Prior Lawsuit was resolved via settlement. (Compl. ¶ 17.)

In addition to filing the Prior Lawsuit, Plaintiff also complained about the sexual assault and harassment and was transferred to the Queens Court House, located at 125-01 Queens Boulevard, Kew Gardens, New York 11415 (the "Queens Court House"), so that she would no longer work with Kelly or Hanley. (Id. ¶ 16.) From the time of her Complaint until January 2021, Plaintiff continued to work at the Queens Court House location. (Id. ¶ 20.) During this time, Plaintiff alleges, upon information and belief, a number of employees of Defendants, particularly those who know and are friends with Kelly, learned Plaintiff's true identity. (Id. ¶ 19.)

In January 2021, Plaintiff was assigned to temporary duty on Riker's Island. (Id. ¶ 20.) Upon completion of her temporary duty, Defendants informed Plaintiff she would be

transferred to the Otis Bantam Correctional Center ("OBCC"), where Kelly and Hanley previously worked for several years. (Id. ¶ 22.)  Plaintiff alleges, upon information and belief, that Kelly is widely known at OBCC and has many friends who still work at OBCC.  (Id. ¶¶ 23-24.)  Plaintiff alleges, upon information and belief, that at least some of these friends are aware of Plaintiff's identity.  (Id. ¶ 25.)  Plaintiff asserts that her transfer to OBCC was in retaliation for the Prior Lawsuit and that she fears for her safety at OBCC because of the alleged risk of retribution from Kelly's friends at OBCC.  (Id. ¶¶ 26-27.)

    Plaintiff alleges that she was almost immediately subject to retaliation upon her arrival at OBCC.  (Id. ¶¶ 29-31.) Plaintiff identifies two instances of alleged retaliation. First, starting on July 29, 2021 and continuing onto July 30, 2021, Plaintiff was forced to remain at her post for a triple tour without receiving any meal break.  (Id. ¶ 30.)  Second, during that same period, Plaintiff was overseeing forty-four inmates who allegedly became irate and made threats towards her. (Id. ¶ 31.)  Despite a request from Plaintiff, her area supervisor refused to send any backup, which Plaintiff alleges placed her in mortal danger.  (Id.)

II.  **Legal Standard**

    When determining whether a plaintiff should be permitted

3

to proceed pseudonymously, courts must balance the plaintiff's interest in anonymity against both the public interest in disclosure and any prejudice to the defendant. See Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 189 (2d Cir. 2008). The Court of Appeals has set forth the following non-exhaustive list of ten factors to consider in performing this balancing test:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of their age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press their claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
>
> (7) whether the plaintiff's identity has thus

>far been kept confidential;
>
>(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
>
>(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
>
>(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

Id. at 189-190 (internal citations omitted).  Courts are "not required to . . . use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion."  Id. at 191 n.4.

**III. Discussion**

Plaintiff concedes that Sealed Plaintiff factors four and nine weigh against her but argues that the other factors weigh in her favor and that, on balance, the factors weigh in favor of permitting her to proceed under a pseudonym.  (Pl.'s Mot. 7.)  The Court considers the remaining factors in turn.

The first factor is whether the "litigation involves matters that are highly sensitive and of a personal nature." Sealed Plaintiff, 537 F.3d at 189.  Contrary to Defendants' assertion, Plaintiff did not gratuitously reference the Prior Lawsuit and the sexual assault in the instant Complaint.  (Defs.' Opp'n 5-6.)  Plaintiff's theory is that the alleged

5

retaliation is motived by the Prior Lawsuit, which involved serious allegations of sexual assault.  Facts related to the assault underlying the Prior Lawsuit are likely to be pertinent to Plaintiff's retaliation claim.  Sexual assault is widely recognized as sensitive and private in nature.  Doe No. 2 v. Kolko, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); Doe v. Vassar College, No. 19-cv-9601, 2019 U.S. Dist. LEXIS 196033, at *4 (S.D.N.Y. Nov. 13, 2019); Doe v. Indyke, No. 19-cv-7771, 2019 U.S. Dist. LEXIS 157124, at *2 (S.D.N.Y. Sept. 12, 2019); Doe v. City of New York, No. 15-cv-117, 2016 U.S. Dist. LEXIS 16344, at *5 (S.D.N.Y. Feb. 4, 2016).  The Court is cognizant that allegations of sexual assault alone are not sufficient to warrant the use of a pseudonym.  (Defs.' Opp'n 5-6.)  Whether the litigation implicates sensitive and private matters is, after all, only one of the factors.  But the Court does not agree that the fact that a litigant may not ultimately show his or her entitlement to proceed under a pseudonym overall means that sexual assault is not sensitive and private.  The first factor weighs in Plaintiff's favor.

The second factor is whether there is a risk of retaliatory physical or mental harm to Plaintiff.  The Complaint alleges that Plaintiff has already been retaliated against by being intentionally left alone with over forty irate inmates where she was subject to the risk of physical harm.  Plaintiff also works

6

in a correctional facility where alleged friends of the person she accused of sexually assaulting her work, some of whom, but not all of whom, know that Plaintiff is the accuser.  Further exposing Plaintiff's name "risks exposing her to additional retaliation and harassment by additional actors."  Doe v. City of New York, No. 18-cv-670, 2020 U.S. Dist. LEXIS 4655, at *12 (E.D.N.Y. Jan. 10, 2020).  The second factor weighs in Plaintiff's favor and is particularly weighty given the potential severity of the physical harm that can occur in a correctional facility and the fact that this risk has already allegedly materialized at least once.

The third factor is whether identification presents other harms, including whether the injury litigated against would be incurred as a result of the disclosure.  Plaintiff identifies the risk of retaliation as the harm and the focus of this litigation and argues that the third factor weighs in her favor.  The Court does not find that the risk of retaliation can constitute "other harms" when the second factor specifically encompasses the risk of retaliation, even when a plaintiff brings a retaliation claim.  Because Plaintiff has not identified any other potential harm, the Court finds that the third factor weighs against Plaintiff.

The fifth factor is whether the suit is challenging the actions of the government or that of private parties.  Because "a

challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern protecting its reputation than a private individual," courts more readily grant anonymity where the defendant is a governmental entity. Kolko, 242 F.R.D. at 195.  Again, the Court is cognizant that there are multiple factors to weigh and that satisfaction of the fifth factor alone is not sufficient to support anonymity.  (Defs.' Opp'n 7-8.)  But, again, the fact that a plaintiff may not ultimately prevail overall does not change the simple question raised by the fifth factor and the fairly straightforward application of the law based on the answer to that question. Here, Plaintiff sues arms of the government for alleged misconduct.  The fifth factor therefore weighs in Plaintiff's favor.

The sixth factor is whether the defendant is prejudiced by allowing the plaintiff to proceed anonymously, whether the prejudice varies depending on the stage of the litigation, and whether the prejudice can be mitigated.  Defendants' arguments related to reputational harm and fairness are misguided.  (Defs.' Opp'n 8-9.)  Defendants rely on a case involving private parties but ignore the fact that government entities have a reduced reputational interest.  Kolko, 242 F.R.D. at 195.  Further, the Court grants Plaintiff's request to proceed pseudonymously only as to pretrial proceedings at this time, mitigating the potential

prejudice that could result from a pseudonymous trial. Defendants' argument that allowing Plaintiff to proceed anonymously creates a discovery asymmetry is more forceful. (Defs.' Opp'n 8.)  However, ultimately the likelihood of "[u]known witnesses" coming forward "with vital information and evidence" (id.) in this case is minimal because the alleged retaliation occurred in the prison system, where the movements and identifies of individuals are regulated and the Defendants know who was where and when.  Under these circumstances, where an unknown witness to significant aspects of the litigation is unlikely to exist, the prejudice is significantly reduced.  The sixth factor weighs in Plaintiff's favor.

The seventh factor is whether the plaintiff's identify has thus far been kept confidential.  Plaintiff has not sought publicity and has not disclosed her name to the public. Defendants do not argue otherwise.  The seventh factor weighs in Plaintiff's favor.

The eight factor is whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identify.  Defendants rely on the presumption of openness in court proceedings and argue that workplace harassment or retaliation are not sufficiently weighty to overcome the public interest in open court proceedings.  (Defs.' Opp'n 9-10.) This case involves claims that Plaintiff was placed in a

potentially lethal situation by one of the government Defendants' employees in retaliation for her complaining of a serious sexual assault by another of the government Defendants' employees.  The public has a strong interest in ensuring that plaintiffs are not deterred from reporting such alleged conduct by government entities.  The eighth factor weighs in Plaintiff's favor.

The tenth factor is whether there are alternative mechanisms to protect the plaintiff's confidentiality.  Defendants propose sealing and redacting.  (Defs.' Opp'n 10.)  The Court finds that redactions or sealing impose at least as much on the public's interest in disclosure as allowing her to proceed pseudonymously.  R.F.M v. Nielsen, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019).  The Court therefore finds that the tenth factor weighs in Plaintiff's favor.

On balance, the Court finds that the Sealed Plaintiff factors weigh in favor of allowing Plaintiff to proceed pseudonymously for pretrial purposes.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion to proceed pseudonymously is GRANTED for all pretrial proceedings. The Clerk of the Court is directed to close the open motion [dkt. no. 5].

**SO ORDERED.**

Dated:      March 29, 2023
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge