UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                      Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTIONS,<br><br>                      Defendants. | No. 22 CV 6898 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

      Plaintiff Jane Doe ("Plaintiff" or "Doe") brings this action against defendants City of New York (the "City") and New York City Department of Corrections ("DOC") (collectively the "Defendants"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the "NYSHRL"); and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 et seq. (the "NYCHRL").

      Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiff

---

[1] (See Notice of Mot. to Dismiss the Compl. ("MTD"), dated Nov. 9, 2022 [dkt. no. 15]; see also Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. ("Def. Br."), dated Nov. 9, 2022 [dkt. no. 15-1]; Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. ("Def. Reply Br."), dated Jan. 10, 2023 [dkt. no. 24].)

1

opposes the motion.[2]  For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## I.     BACKGROUND

On August 29, 2018, Plaintiff commenced a lawsuit against the Defendants and Deputy Warden Robert Kelly III ("Kelly") individually (the "Prior Lawsuit"), alleging that she was sexually harassed by Kelly and Corrections Officer Keisha Hanley ("Hanley").[3]  The Prior Lawsuit, which Plaintiff filed pseudonymously, alleged that Kelley and Hanley sexually harassed and assaulted Plaintiff by, among other things, propositioning her for a threesome, forcing her to remove her top, fondling Plaintiff's breasts and vagina, and attempting to remove her pants.  (Id. ¶ 15.)  This ordeal was followed by continued harassment by Kelly and Hanley.  (Id.)  Ultimately, the Prior Lawsuit was resolved in a settlement.  (Id. ¶ 17.)  Plaintiff alleges that although she filed pseudonymously, her identity became known to employees of Defendants, particularly those who know Kelly.  (Id. ¶ 19.)

After complaining about the assault, Plaintiff was transferred from Defendants' location at 09-09 Hazen Street, East Elmhurst, New York 11370 (the "Hazen Street Location") to

---

[2] (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp."), dated Dec. 23, 2022 [dkt. no. 23].)
[3] (See Compl. ("Compl."), dated Aug. 12, 2022 [dkt. no. 1] ¶¶ 13-14.)

2

the Queens Court House, located at 125-01 Queens Boulevard, Kew Gardens, New York 11415 (the "Queens Court House"), so that she would no longer work with Kelly or Hanley.  (Id. ¶ 16.) Thereafter, on May 21, 2021, Plaintiff was advised that she would be transferred to the Otis Bantum Correctional Center facility ("OBCC"), where Kelly and Hanley worked for several years and where many of Kelly's alleged friends and associates remained employed.  (Id. ¶¶ 22-24.)

Plaintiff resisted her transfer to OBCC, expressing her fear to Defendants that Kelly's colleagues would seek retribution for her involvement in the Prior Lawsuit.  (Id. ¶¶ 25-27.)  For example, in May and June of 2021, Plaintiff's counsel complained to Defendants that the transfer was retaliatory and requested that Plaintiff be sent back to the Queens Court House.  (Id. ¶ 27.)  Defendants disregarded Plaintiff's request.  (Id. ¶ 28.)  As a result, Plaintiff reported to the OBCC, where she claims Defendants almost immediately subjected her to retaliatory acts.  (Id. ¶¶ 29, 32.) For example, on July 29, 2021, and continuing into July 30, 2021, Plaintiff was forced to remain at her post for a triple tour without receiving a meal break.  (Id. ¶ 30.)  During that same period, forty-four inmates who Plaintiff oversaw became irate and made threats towards her.  (Id. ¶ 31.)  Plaintiff, who stands 5'2", requested backup from her area supervisor.  (Id.)

However, the supervisor refused to send any backup, placing Plaintiff in fear for her life.  (Id.)

Plaintiff alleges that Defendants unlawfully retaliated against her for filing the Prior Lawsuit by: (1) transferring her to OBCC; (2) forcing her to remain at her post for a triple tour without a meal break; and (3) refusing to provide backup when inmates became irate and began to threaten her.  (Id. ¶¶ 26, 30-31.)

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).  In assessing a motion to dismiss, a court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  In deciding a motion to dismiss for failure to state a claim, the court does not consider materials outside of the pleadings.

4

Nakahata v. NY-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citations omitted).

### B. Retaliation Claims

At the pleadings stage, "the allegations in the complaint need only give plausible support to . . . reduced prima facie requirements." Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018) (citations omitted). "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (citations omitted). This burden is low, requiring only minimal support for the proposition of discriminatory intent of the employer. See id. at 85 (citations omitted). State law retaliation claims are treated as "analytically identical" to Title VII claims, and courts apply the same standards of proof to both claims. Corrales v. Montefiore Med. Ctr., No. 22-CV-3219 (LAP), 2023 WL 2711415, at n.9 (S.D.N.Y. Mar. 30, 2023) (quoting Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019)).

#### 1. Causation

To sufficiently plead causation under Title VII or the NYSHRL, a plaintiff "must plausibly allege that the retaliation

5

was a 'but for' cause of the employer's adverse action." <u>Vega</u>, 801 F.3d at 90 (citing <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338 (2013)).  A causal connection may be established either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 319 (2d Cir. 2015) (citations omitted). Proximity in time between a protected action and alleged retaliatory conduct can be sufficient if it is "very close." <u>See</u> <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001).

In contrast, under the NYCHRL, a plaintiff is not required to demonstrate but-for causation.  A plaintiff must show that defendants engaged in some prohibited conduct that was "caused at least in part by . . . retaliatory motives."  <u>See</u> <u>Brown v. Montefiore Med. Ctr.</u>, No. 19 CV 11474 (ALC), 2021 WL 1163797, at *11 (S.D.N.Y. Mar. 25, 2021) (citing <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 112 (2d Cir. 2013)).

### 2. Material Adversity

Under Title VII and the NYSHRL, Plaintiff must show that the challenged action is "materially adverse," which is defined as an action that "well might have 'dissuaded a reasonable

6

worker from making or supporting a charge of discrimination.'" See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (citations omitted).  Material adversity is determined objectively based on the reactions of a reasonable employee. Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) (citations omitted).  However, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context."  Id. (citations omitted). Additionally, the alleged actions do not have to bear on the terms or conditions of employment.  See Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010).  In contrast, "the City's human rights law differs from the standard currently applied by the Second Circuit in [Title VII] retaliation claims," as it proscribes retaliation "in any manner."  See Williams v. NYC Hous. Auth., 61 A.D.3d 62, 69 (1st Dep't 2009) (citations omitted).

## III.  DISCUSSION

### A. Claims Against DOC are Dismissed

Defendants assert that the DOC is a non-suable agency of the City.  (Def. Br. at 3.)  The Court agrees.  See N.Y.C. Admin. Code & Charter Ch. 17 § 396; Martinez v. N.Y.C. Dep't of Corr., No. 18 Civ. 2954 (LGS), 2019 WL 3034865, at *2 (S.D.N.Y. July 10, 2019).  Therefore, all claims against the DOC are dismissed.

### B. <u>Plaintiff's Retaliation Claim</u>

Plaintiff alleges that Defendants unlawfully retaliated against her for filing the Prior Lawsuit by: (1) transferring her to OBCC; (2) forcing her to remain at her post for a triple tour without a meal break; and (3) by refusing to provide backup when inmates became irate and began to threaten her. (Compl. ¶¶ 26, 30-31.) Defendants do not dispute that Plaintiff engaged in a protected activity by commencing the Prior Lawsuit. Instead, Defendants assert that Plaintiff has not sufficiently alleged that the actions taken were materially adverse and were caused by Plaintiff engaging in the protected activity. (Def. Br. at 6.)[4]

#### 1. Causation

Defendants argue that Plaintiff has inadequately alleged the causation element of her retaliation claim. (Def. Br. at 7-8.) To the extent Plaintiff's claim is based on her transfer, the Court agrees. Plaintiff was transferred some three years after commencing the prior lawsuit. (Compl. ¶ 22.) This is

---

[4] Defendants also argue that Plaintiff has not sufficiently pleaded that her employers knew of her protected activity. (Def. Reply Br. at 3.) However, Defendants raised this argument for the first time in their reply brief, and "[t]he law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." In re Various Grand Jury Subpoenas, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) (citing ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., 485 F.3d 85, 100 n.16 (2d Cir. 2007)).

8

simply too much time for the Court to infer that retaliatory animus was a but-for cause of the allegedly retaliatory transfer, see Clark Cty. Sch. Dist., 532 U.S. at 274 (finding that an employee's transfer twenty months after a protected action "suggests, by itself, no causality at all"), and the Complaint does not contain any additional allegations that raise a plausible inference that the transfer was retaliatory.

Plaintiff's second and third bases for the retaliation claim, that she was forced to work a "triple tour" without a meal break and was denied backup, present a closer call. (Compl. ¶¶ 30-31.)  Defendants again argue that the three-year gap between Plaintiff's protected activity and the alleged retaliation renders the protected activity too remote from the alleged retaliation to infer that the two are causally related. (Def. Br. at 8.)  But as Defendants note earlier in their brief, "[i]n analyzing a retaliation claim, context matters."  (Def. Br. at 7 (citing Hicks, 593 F.3d at 165).)  Here, Plaintiff alleges that she was retaliated against after her transfer to OBCC, the prior workplace of Kelly and the current workplace of his friends and colleagues.  Accordingly, the causal timeline must account for the fact that, in the context of these claims, there was no opportunity to retaliate against Plaintiff until she was transferred.  See Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (finding that temporal nexus "is made even

closer by the fact that the adverse action occurred at the first actual opportunity to retaliate"); Kopchik v. Town of E. Fishkill, NY, 759 F. App'x 31, 35–36 (2d Cir. 2018) (attenuating the temporal nexus requirement where the retaliatory action "would take longer to plan and formally adopt").

Here, Plaintiff was transferred to OBCC around June of 2021. (Compl. ¶ 22.) On July 29, she alleges that she was subjected to a "triple tour" and isolated with forty-four inmates. (Id. ¶¶ 30-31.) Accordingly, Plaintiff alleges that she suffered retaliatory conduct within roughly two months of Defendants' employees, Kelly's alleged friends and colleagues, first opportunity to retaliate against her for the Prior Lawsuit. Taking this context into consideration, the brief time between Plaintiff's transfer and the alleged retaliatory acts is sufficient to support an inference of retaliation at the pleading stage.

### 2. Material Adversity

Defendants next argue that Plaintiff's claim, to the extent based on the triple tour, fails because it is not "materially adverse." (Def. Br. at 7.) Defendants maintain that "triple tours" are common within the DOC, pointing to a 2020 law review article which discusses lawsuits brought by corrections unions for such shifts. (Id.) Defendants argue that because such conduct is typical, a "triple shift" would not dissuade a

10

reasonable employee from engaging in a protected activity. (Id.)

The Court is unpersuaded.  First, Defendants' argument based on the factual claim that "triple tours" are common within the DOC relies on materials outside the pleadings and is improper.  See Nakahata, 723 F.3d at 202.  Second, even if the Court were to consider Defendants' extrinsic material, the Court can draw no meaningful inferences about DOC's scheduling practices in 2021 from the fact that lawsuits were filed by the corrections union in 2020.  The existence of the 2020 litigation demonstrates only that triple tours occurred prior to the 2020 litigation.

Even if the triple tour was insufficiently adverse, Plaintiff's claim would survive based on her alleged abandonment in the face of dozens of irate prisoners.  Defendants, wisely, do not explicitly challenge that being left alone with forty-four irate inmates and refused backup is materially adverse.  Indeed, Defendants are notably silent regarding these troubling allegations from the complaint, other than to assert that Plaintiff has not sufficiently pleaded causation for any of the alleged retaliatory acts, as addressed above.  Accepting the factual allegations as true, leaving Plaintiff at severe risk of physical harm and death, (Pl's. Opp. at 5), would dissuade any reasonable employee from making a claim of discrimination.  See

11

White, 548 U.S. at 68-70; Tepperwien, 663 F.3d at 568 (citing Hicks, 593 F.3d at 165)).  Therefore, even if the alleged triple tour is insufficient, Plaintiff has indisputably alleged a materially adverse action.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (dkt. no. 15) is GRANTED in part and DENIED in part.  Counsel shall confer and inform the Court by letter how they propose to proceed.

**SO ORDERED.**

Dated:    July 19, 2023
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

12